## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EXPRESS FINANCIAL SERVICES, INC., and | ) | Case No. 07-27374JAD |
| EXPRESS TITLE SERVICES OF OHIO, INC., | ) | Case No. 07-27377JAD |
| | ) | Jointly Administered At |
| Debtors. | ) | Case No. 07-27377JAD |
| | ) | |
| | ) | Chapter 11 |
| ——————————————— X | ) | |
| | ) | |
| FINANCIAL FREEDOM SENIOR FUNDING CORP., and HOME LOAN SERVICES, INC., | ) | |
| | ) | Adversary No. 08-2127JAD |
| Plaintiffs/Movants, | ) | Document No. 116 |
| | ) | |
| vs. | ) | |
| | ) | |
| EXPRESS FINANCIAL SERVICES, INC., and EXPRESS TITLE SERVICES OF OHIO, INC., and THE CREDITORS, | ) | |
| | ) | |
| Defendants/Respondents. | ) | |
| ——————————————— X | | |

Appearances:   Paul J. Cordaro, Esq., For Express Financial Services Inc., and Express Financial Services of Ohio, Inc.
William C. Price, Esq., On Behalf Of The Official Committee Of Unsecured Creditors
Kristopher Issac deVyver, Financial Freedom senior Funding Corp., and Home Loan Services, Inc.

## <u>MEMORANDUM ORDER</u>

Before the Court is the "Plaintiffs' Motion For An Award Of Fees And Costs"

(the "Fee Motion").  In their Fee Motion, Financial Freedom Senior Funding

00002933.WPD

Corporation and Home Loan Services, Inc., (collectively "the Plaintiffs") seek to recover $124,338.05 in fees and expenses for the filing of this Interpleader Action. Specifically, Financial Freedom Senior Funding Corporation seeks to recover $33,196.75 in fees and $17,543.34 in expenses; and Home Loan Services, Inc. seeks to recover $21,701.00 in fees and $51,896.96 in expenses. An objection was filed by Express Financial Services, Inc. and Express Title Services Of Ohio, Inc., (collectively "the Debtors") to which the Official Committee Of Unsecured Creditors joined.

I.

Prior to the Debtors filing for bankruptcy relief, the Plaintiffs and Debtors had a business relationship in which the Debtors would provide the Plaintiffs closing and settlement services, including appraisals. To perform its appraisal obligations, the Debtors contracted with various independent appraisers who would eventually become the Debtor's creditors (hereinafter the "appraisers").

The Debtors filed voluntary bankruptcy petitions in the underlying bankruptcy case on November 21, 2007. On April 3, 2008, the Plaintiffs filed the Interpleader Complaint in this adversary proceeding pursuant to Fed. R. Civ. P. 22 (made applicable to bankruptcy proceedings by way of Fed. R. Bankr. P. 7022) and 28 U.S.C. § 1335.

At the time the Interpleader Complaint was filed, the Plaintiffs were in possession of $1,214,324.00 which they believed were owed to the Debtors.

Specifically, Financial Freedom Senior Funding Corporation was holding $680,309.00 in escrow; and Home Loan Services, Inc., was holding $534,015.00 in escrow (collectively the "escrowed funds"). The Debtors indicated to the Plaintiffs that it was their belief that the escrowed funds were property of the bankruptcy estate. However, at the same time the Debtors were communicating their entitlement to the escrowed funds, the Plaintiffs were receiving demands from the appraisers asserting claims in the escrowed funds. As a result of the competing interests, the Plaintiffs felt that they were subject to double or multiple liability and filed the Interpleader Complaint.

On April 7, 2008, the Plaintiffs filed a Motion to Deposit Funds Pursuant To Bankruptcy Rule 7067 ("Motion to Deposit Funds"). A hearing was held on May 9, 2008, at which time the Court granted the Motion to Deposit Funds. On May 12, 2008, Freedom Financial Senior Funding Corporation deposited $680,309.00 with the Court, and Home Loan Services, Inc. Deposited $534,015.00 with the Court.

On September 22, 2008, the Court signed a stipulation captioned "Agreed and Stipulated Order (I) Determining Propriety Of The Interpleader Action, (II) Dismissing Plaintiffs From The Interpleader Action, (III) Setting Deadlines For Discovery And The Filing Of Other Motions, and (IV) Enjoining Defendants From Instituting Action Against Plaintiffs Regarding Interplead Funds" (the "Stipulation Order"). The Stipulation Order held, *inter alia*, that the Plaintiffs have brought a

proper interpleader action, and set deadlines for the Plaintiffs to file a motion for fees and costs.

Based upon the Stipulated Order, the Plaintiffs filed the instant Fee Motion seeking to recover their fees and expenses in filing the Interpleader Complaint. The objection filed by the Debtors and joined by the Official Committee of Unsecured Creditors seeks to wholly deny the Plaintiffs fees and costs.

## II.

The Debtors articulate five reasons why the Court should deny the Fee Motion.[1] These reasons can be broken down into essentially two arguments: the interpleader action was improperly filed, and the manner in which the interpleader action was handled lead to increased fees and costs.

The Debtors first allege that the interpleader was improperly filed. This argument is premised on the notion that the Plaintiffs only used the Interpleader Action to aid them in making an ordinary business decision and that they were not disinterested stakeholders. According to the Debtors, the routine business practice between the parties was that the Plaintiffs would pay the Debtors, and the Debtors would in turn pay their appraisers. The Plaintiffs, therefore, should not be permitted to deviate from their ordinary business judgment simply due to a

---

[1] The five reasons the Debtor gave to deny the fee motion are (i) the Plaintiffs initiated the interpleader action to aid them in making an ordinary business decision; (ii) the Plaintiffs were not disinterested stakeholders; (iii) Plaintiffs delayed in filing the action; (iv) the true beneficiaries' right to the interplead funds outweighs the right of the Plaintiffs to recover their fees and costs; and (v) the fees requested by the Plaintiffs are not appropriate because there were more cost-effective measures that could have been utilized to accomplish the same goals.

"few" creditors threatening litigation because there was never any real threat of multiple liability. Without the threat of multiple liability, according to the Debtors, the Plaintiffs cannot be considered to be disinterested stakeholders. Moreover, the Debtors allege that the fact that an injunction was sought and obtained against all of the defendants from instituting any action against the Plaintiffs to recover any of the escrowed funds indicates that they are interested parties in the Interpleader Action.

The Court, however, rejects this objection because a stipulation was entered in this case which negates the Debtors' arguments. The Stipulation Order states that the Plaintiffs have brought a proper interpleader action and will be exposed to multiple liability. Adv. No. 08-2127JAD, Doc. # 90, p. 3 - 4, ¶¶ 3 and 4. The Stipulation Order also permits the Plaintiffs' injunctive relief. Adv. No. 08-2127JAD, Doc. # 90, p. 4, ¶ 8. Counsel to the Debtors, counsel to the Official Committee of Unsecured Creditors, and counsel to the Plaintiffs all signed the Stipulation Order. The Court, after having reviewed all of the provisions, signed the Stipulation Order on September 22, 2008.

The Stipulation Order has never been altered, amended, or vacated. As such, it is a final order which carries with it a *res judicata* effect. See In re Mantunas, 261 B.R. 129 (Bankr. D.N.J. 2001) (stipulation entered between debtor and IRS precluded IRS, on *res judicata* grounds, from later asserting additional taxes were owed); see also In re Montgomery Ward, LLC, 388 B.R. 49 (Bankr.

D.Del. 2008) (Plan Administrator barred from challenging character of claim in second bankruptcy when Debtors, with whom Plan Administrator is in privity, did not object to claim in first bankruptcy and actually agreed to it in stipulation agreement entered in first bankruptcy). The Debtors are therefore precluded from asserting that the interpleader filed by the Plaintiffs was inappropriate.

The Debtors next argue that the manner in which the interpleader action was handled unreasonably increased the Plaintiffs' fees and costs. This argument is based upon the delayed filing of the Interpleader Action and there being more cost-effective measures available to accomplish service of process.

The Court is mindful that the Interpleader Action was not filed until seven (7) months after the Debtors ceased operations and five (5) months after the Debtors filed their bankruptcy petition. However, as articulated at the hearing on the Fee Motion, Plaintiffs' counsel and Debtors' counsel were in communication with each other during the seven months prior to the Interpleader Action being filed. The decision was jointly made by all parties to file an interpleader action, and the Debtors' counsel took the task of drafting the interpleader which was then submitted to Plaintiffs' counsel for their review. *Audio Recording of Hearing Held January 6, 2009* (Adv. No. 08-2127JAD) at 11:28 - 11:30. The Court does not find the delay in filing the Interpleader Action to be solely due to the Plaintiffs, and will not preclude the recovery of their fees and costs based upon that ground.

The Debtors also take issue with the total expenses affiliated with the

commencement of the Interpleader Action.[2] It is the Debtors' belief that there were more cost-effective measures available to the Debtors to provide notice to all parties of the various pleadings and orders filed in the Interpleader Action. However, hindsight is always "20/20". Just because there may have been more cost-effective means of accomplishing service does not mean that the method in which the Plaintiffs accomplished service was necessarily unreasonable. The fact of the matter is that service had to be made on the approximately 2700 defendants. With such a large number of defendants, service was going to be somewhat costly every time notice had to be issued to every party in the adversary. The Court will therefore not deny all of the Plaintiffs' expenses because there were more cost-effective measures available. The expenses incurred were necessary and required by the Court.

III.

Even though the Debtors have stated that they will not object to the Plaintiffs' attorneys fees and costs on reasonableness grounds, the Court notes that it has an independent duty to review the Plaintiffs' Fee Motion. Cf. In re Busy Beaver Building Centers, Inc., 19 F.3d 833 (3d Cir. 1994).

There is no explicit statutory authority requiring a federal court to award attorney fees and costs in an interpleader action. See 28 U.S.C. § 1335; 28 U.S.C. § 1397; 28 U.S.C. § 2361; see also First Trust Corp. v. Bryant, 410 F.3d 842, 855-

---

[2] The Debtors suggest that postage and photocopy expenses were too high because the Plaintiffs did not "double side" or print pages on "front and back" of the various papers that were served.

00002933.WPD                                        -7-

856 (6th Cir. 2005).  However, federal courts have

> relied on the language of 28 U.S.C. § 2361, which
> provides for service of process and personal jurisdiction
> for statutory interpleader, to the effect that the "district
> court shall hear and determine the case, and may
> discharge the plaintiff from further liability, make the
> injunction permanent, and *make all appropriate orders to
> enforce its judgment*," to award attorney's fees.

Id., at 856 (quoting 28 U.S.C. § 2361 (emphasis added)).  It has since evolved

under the common law that a federal court may award a plaintiff who files an

interpleader action reasonable costs and attorney fees out of the interplead funds.

See In re OEM Indus. Corp., 135 B.R. 247 (Bankr. W.D.Pa. 1991); see also 4-22

Moore's Federal Practice - Civil §22.06(2).

Whether the fees and costs being sought are in fact reasonable is a

determination that is left to the discretion of the court. In re OEM Indus. Corp.,

135 B.R. at 249; see also In re Mandalay Shores Co-Op. Housing Ass'n, Inc., 191

B.R. 229 (M.D.Fla. 1995); Smith Barney, Harris Upham & Co., Inc. v. Connolly,

887 F.Supp. 337 (D.Mass. 1994); In re Creekstone Apartments Associates, L.P.,

165 B.R. 851 (Bankr. M.D.Tenn. 1994).  As the Court observed in In re OEM

Indus. Corp., 135 B.R. 247 (Bankr. W.D.Pa. 1991),

> The institution of a suit in interpleader, including the
> depositing of the fund in the registry of the court and of
> procuring an order of discharge of the stakeholder from
> further liability, does not usually involve any great
> amount of skill, labor or responsibility, and while a
> completely disinterested stakeholder should not
> ordinarily be out of pocket for the necessary expenses
> and attorney's fees incurred by him, the amount allowed

for such fees should be modest.

Id., at 250 (quoting In re Temp-Way Corp., 80 B.R. 699, 706 (Bankr. E.D.Pa. 1987)(citation omitted)).

The Court has reviewed the Fee Motion and does have some concerns.  For example, each Plaintiff was, at one point, represented by separate counsel: Home Loan Services, Inc., was represented by Reed Smith LLP ("Reed Smith"), and Financial Freedom Senior Funding Corporation was represented by Orrick, Herrington & Sutcliffe LLP ("Orrick").[3]  The Fee Motion includes as exhibits billing invoices from both Reed Smith and Orrick which itemize the amount of time that each firm spent working on the matters related to the Interpleader Action.  The invoices show Reed Smith billed $21,701.00 in legal fees to Home Loan Services, Inc., and Orrick billed $33,196.75 in legal fees to Financial Freedom Senior Funding Corporation.

The fees and expenses of Reed Smith appear to be reasonable.  The Court did note, however, that the first invoice submitted by Reed Smith appears to be off by $183.00 due to a mathematical error.[4]  Reed Smith will therefore have their fees reduced by $183.00 to correct this mistake.

An inspection of the billing invoices submitted by Orrick causes the Court

---

[3] For the remainder of this Memorandum Order, the fees and expenses of Home Loan Services, Inc. will be referred to as Reed Smith fees and Reed Smith expenses; and Financial Freedom Senior Funding Corporation will be referred to as Orrick fees and Orrick expenses.

[4] There is a line drawn through the total value of the first invoice with a hand written "475.00" written immediately to the right of the crossed-out value.  However, when the attorney's billable hour rate is multiplied by the amount of hours accounted for, the correct number should have been $292.00.

some concern.  As a result, the Court will reduce the fees of Orrick by $12,247.88

and their expenses by $16,114.68 for the reasons that follow.

First, the actual complaint filed in this Interpleader Action is a six (6) page

document with a ninety (90) page service list attached.  The invoices indicate that

Orrick billed 28.6 hours of attorney time.  Cognizant of the fact that the Debtors'

counsel drafted the Interpleader Complaint, a reasonable amount of time to decide

to file the interpleader, perform revisions, and file the complaint would have been

no more than fifteen (15) hours of billable attorney time at each firm.  Where Reed

Smith appears to have billed 14.7 hours of time, Orrick has billed almost double

that amount.  Taking into consideration the percentage of time worked by each

attorney at Orrick and their respective billable hour rates with the agreed 10%

discount,[5] the Court is reducing Orrick's fees by $5,679.68.[6]

Orrick's fees also need to be adjusted based on the time billed on April 10,

2008.  The invoice shows that the attorney billed 2.5 hours for a telephone

conference with local counsel, a review of the court's order on the Motion To

Deposit Funds,[7] a review of the service copies, and a telephone conference with

---

[5] The 10% discount assessed by Orrick to Financial Freedom Senior Funding Corporation was part of the fee arrangement between the attorneys and the client. See Adv. No. 08-2127JAD Doc. No. 120, p. 2, ¶¶ 4 and 5.

[6] The partner at Orrick performed approximately 11% of the work, and the associate attorney performed approximately 89% of the work.  Based upon fifteen billable hours, the partner at Orrick was allotted 1.65 billable hours, and the associate was allotted 13.35 billable hours.  When their fees are calculated the total fees allotted are $6,779.42.  This is a difference of $5,679.68 from the $12,059.10 that was actually invoiced.

[7] This order was only a scheduling order setting a time and location for a hearing on the Motion to Deposit Funds.

00002933.WPD                                         -10-

the Court. The Court, however, did not hold a hearing on April 10, 2008. It is possible that this entry referred to a hearing the Court held on April 11, 2008, but a review of the parties in attendance at that hearing does not indicate that any attorney from Orrick appeared at the hearing either in person or telephonically. As the Court is unable to determine how much time was actually billed for the telephone conference that did not take place, the Court is going to disallow the entire $1001.25 which was billed to Financial Freedom Senior Funding Corporation on April 10, 2008.

Lastly the Court has determined that the fees as they relate to the amount of time spent preparing for, and attending the hearing on the Expedited Motion to Intervene and the Motion to Deposit Funds are unreasonable. The invoices reflect that the attorney at Orrick spent 17.5 hours preparing for and attending the hearing on the two motions. This is an unreasonable amount of time for a couple of reasons. First, the hearing itself lasted just over 26 minutes.[8] There was no opposition to either the Motion to Intervene or the Motion to Deposit Funds. The majority of the hearing was spent on the Exhibit attached to the Motion to Intervene which was a proposed Motion To Stay Adversary Proceeding.

Secondly, the amount of time preparing for a hearing on two uncontested matters may have been attributable to the fact that counsel for Financial Freedom Services Corporation traveled from San Francisco, California to Pittsburgh,

---

[8] This would mean that Financial Freedom Senior Funding Corporation was billed .4 hours for attending the hearing and 17.1 hours preparing for it.

00002933.WPD                                         -11-

Pennsylvania to attend the hearing in person.  Traveling to the hearing was unnecessary, especially since the attorney for Financial Freedom Senior Funding Corporation merely stated her name for the record and then only listened to the remainder of the hearing. *Audio Recording of Hearing Held May 9, 2008* (Adv. No. 08-2127JAD) at 10:06 - 10:32.  The Court has procedures in place where any attorney more than 100 miles from the Courthouse may appear telephonically.[9] See *Judge Deller's Procedures Applicable To All Cases* Paragraph E.  The purpose of this procedure is to keep costs down by preventing attorneys from doing unnecessary traveling.  Counsel for Home Loan Services, Inc., spent 3.6 hours preparing for and attending the hearing, and the Court finds this to be a reasonable amount of time.  Therefore, Orrick's billable hours will be reduced to 3.6 hours and the fees will be reduced by $5,566.95.[10]

In regards to the expenses that Orrick has invoiced, the Court noticed that thousands of dollars seem to have been spent between April 3, 2008, and April 14, 2008, which seem to be attributed to making service of the interpleader complaint. However, unlike Reed Smith, Orrick did not make service of any of the documents. Indeed, the record of this adversary reflects that counsel from Reed Smith is the

---

[9] Orrick was aware of this procedure as they were prepared to attend the hearing telephonically prior to making the decision to attend the hearing in person.

[10] This amount was calculated by taking the total adjusted amount billed to Financial Freedom Senior Funding Corporation ($7008.75) and subtracting the Court's adjusted allowable amount ($1,141.80 which was obtained by multiplying 3.6 by the attorney's hourly rate and providing for the agreed 10% discount).

<u>only</u> counsel's signature which is on any of the pertinent certificates of service.[11]

<u>See</u> Adv. No. 08-2127JAD, Doc. Nos. 8, 10, 11.  As such the Court will reduce the

expenses of Orrick by $16,114.68.[12]

*[Remainder Of Page Intentionally Left Blank]*

---

[11] Even if Orrick had made service, the Court would not be inclined to adjust the amount of expenses on a dollar for dollar basis because it appears that the attorneys at Orrick billed legal time for tasks that were clerical in nature.  For example, over three (3) hours of attorney time were billed for "analyzing service", "coordinating filing and service" and "correspondence about service".

[12] This amount represents the expenses incurred between April 3, 2008, and April 10, 2008.

00002933.WPD                                                   -13-

Wherefore, this _13th_ day of **February**, **2009**, the Court **HEREBY ORDERS**

that the Plaintiffs' Motion For An Award Of Fees And Costs is **GRANTED** and

modified as follows:

    1. Home Loan Services Inc., is allowed fees of **$21,518.00** and expenses of **$51,896.96** out of the interplead funds; and

    2. Financial Freedom Senior Funding Corporation is allowed fees of **$20,948.87** and expenses of **$1,428.66** out of the interplead funds.

Dated: _2·13·09_

**Jeffery A. Deller**
United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL COPY TO:**
    Kristopher Issac deVyver, Esq., Counsel To Home Loan Services, Inc.
    Rachel Patience Ragni, Esq., Counsel For Financial Freedom Senior Funding Corporation
    Paul J. Cordaro, Esq., Counsel To Debtors
    William C. Price, Esq., Counsel TO The Official Committee Of Unsecured Creditors
    Office Of United States Trustee

# FILED

FEB 1 3 2009

**CLERK, U.S. BANKRUPTCY COURT
WEST. DIST OF PENNSYLVANIA**